**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lewis R. McCormick,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Arizona Board of Regents, for Northern Arizona University,<br><br>　　　　Defendants. | No. CV-06-2008-PHX-DGC<br><br><br>**ORDER** |

Plaintiff Lewis R. McCormick alleges that Defendant Board of Regents wrongfully terminated him for whistle blowing in violation of the Arizona Employment Protection Act, and discriminated against him on the basis of gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Arizona Civil Rights Act ("ACRA"). Dkt. #1, Ex. 2. Defendant has moved for summary judgment. Dkt. #20. For reasons set forth below, the Court will grant Defendant's motion.

**I.    Background.**

The following facts are undisputed. Plaintiff joined Northern Arizona University ("NAU") in 1998 and eventually held the position of team lead for financial accounting in NAU's administrative computing section. Dkt. #19, ¶ 6; Dkt. #29, at 1, 9. In the fall of 2004, the section started implementing a major upgrade of its "Advantage" financial accounting software. Dkt. #19, ¶8; Dkt. #29, ¶8. On March 9, 2005, Suzanne Stefanko, the interim director of administrative computing and Plaintiff's supervisor, designated Plaintiff as the project manager for the upgrade. Dkt. #19, ¶19; Dkt. #29, ¶19.

1  Ms. Stefanko, on more than one occasion, advised Plaintiff that he was not completing
2  his assigned duties in timely fashion. *See, e.g.,* Dkt. #29, ¶22. Ms. Stefanko conveyed these
3  concerns to Alfred Estrella, NAU's chief information technology officer and Ms. Stefanko's
4  supervisor. *Id.*, ¶29. In mid-April of 2005, Plaintiff was removed as project manager, but
5  remained on the project as technical team lead. Dkt. #19, ¶26; Dkt. #29, ¶26. On May 2,
6  2005, Plaintiff and Ms. Stefanko agreed that Plaintiff would no longer serve as technical
7  team lead. Dkt. #19, ¶30; Dkt. #29, ¶30.

8  On May 5, 2005, Ms. Stefanko sent an email to Mr. Estrella summarizing problems
9  she had with Plaintiff during that week, including Plaintiff's comments regarding security
10 for the upgraded software and the usability of a certain data program, which she alleged had
11 upset some users. Dkt. #19, Ex. A at 1-3. Mr. Estrella authorized Ms. Stefanko to send
12 Plaintiff home until May 9, 2005. Dkt. #19, ¶36; Dkt. #29, ¶36.

13 On May 6, 2005, Mr. Estrella responded to Ms. Stefanko's email, observing that
14 Plaintiff "continues to act in a way that is obviously detrimental to the [upgrade project]" and
15 "does very little in the tasks that [Ms. Stefanko has assigned to him]." Dkt. #19, Ex. A, at 1.
16 The only option mentioned by Mr. Estrella in the email was to not renew Plaintiff's contract
17 – to terminate him. *Id.* Mr. Estrella cautioned that there may be organizational consequences
18 to this action, but said "I'm not sure I have a choice." *Id.*

19 On the same day, May 6, 2005, Plaintiff sent a lengthy email to Dione Russell in
20 NAU's human resources office. Dkt. #29, Ex. H. Mr. Estrella and Ms. Stefanko were copied
21 on the email. *Id.* Plaintiff described difficulties he and co-workers had been experiencing
22 with Ms. Stefanko. *Id.*, at 1. Plaintiff complained that Ms. Stefanko made unreasonable
23 demands, micromanaged tasks, talked down to him and others, failed to give adequate
24 feedback, and inaccurately claimed that users had been upset by his comments. *Id.*, at 1-3.
25 Plaintiff stated that he was "out of options," but expressed hope "that Human Resources can
26 somehow, bring [him and his co-workers] relief." *Id.*, at 1.

27 After speaking with several staff members, Mr. Estrella confirmed his belief that non-
28 renewal of Plaintiff's contract was the appropriate course of action. Dkt. #19, ¶45; Dkt.#29,

- 2 -

¶45. On May 12, 2005, Mr. Estrella recommended to NAU's President, John Haeger, that Plaintiff's contract not be renewed. Dkt. #19, ¶46; Dkt.#29, Ex. I. Mr. Haeger subsequently signed a notice of non-renewal. Dkt. #19, Ex. 4, ¶10. Plaintiff was informed on May 13, 2005, that he was immediately relieved of all duties. Dkt. #19, ¶48; Dkt. #29, ¶48.

In late May of 2005, Plaintiff's attorney sent a letter to NAU suggesting that Plaintiff's May 6, 2005 email to Ms. Russell was a protected act of whistle blowing and that Plaintiff's subsequent termination was therefore improper. Dkt. #19, ¶51; Dkt. #29, ¶51. NAU retained Linda Harris, a former human resources director for the University, to conduct an investigation under NAU's whistle blower policy. Dkt. #19, ¶52; Dkt. #29, ¶52. Ms. Harris found no violation. Dkt. #29, Ex. J. at 4.

**II.     Summary Judgment Standard.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**III.    Discussion.**

     **A.     A.R.S. § 23-1501(3)(c)(ii).**

Plaintiff's complaint alleges that Defendant's conduct constitutes "unlawful termination for 'whistleblowing' under A.R.S. § 23-1501(3)(c)(ii)." Dkt. #1, Ex. 2 at 5. "To establish this claim, Plaintiff must demonstrate that he reported what he reasonably believed to be a violation of Arizona law and that [his employer] terminated him for reporting the alleged violation." *Lyons v. Safeway, Inc.*, 2007 WL 809987, at *6 (D. Ariz. 2007).

1  Plaintiff's response to Defendant's motion concedes that his May 6, 2005 email does not
2  contain an alleged violation of law and therefore is not covered by § 23-1501(3)(c)(ii).
3  Dkt. #28 at 6. The Court accordingly will grant Defendant's motion for summary judgment
4  on this claim.

### B.    A.R.S. § 38-532.

Although not asserted in his complaint, Plaintiff's response to Defendant's motion contends that his email to Ms. Russell was protected by A.R.S. § 38-532 and that his termination in response to the email was therefore wrongful. Dkt. #28 at 6. In addition to the fact that Plaintiff did not assert this claim in his complaint, the Court finds Plaintiff's new argument to be legally deficient for two reasons.

#### 1.    Defendant Is Exempt From § 38-532.

The statute on which Plaintiff relies contains the following exemption for Arizona universities:

> This article does not apply to an employee or former employee of a state university or the board of regents which has in effect at the time a personnel action is taken against the employee a rule or provision for the protection of its employees from reprisal for the disclosure of information to a public body[.]

A.R.S. § 38-532.

At the time of Plaintiff's termination, Defendant had in place Policy 5.18, which prohibited retaliation based on complaints to public bodies. Indeed, the investigation undertaken by Ms. Harris was pursuant to this policy. Dkt. #17, Ex. 7, ¶ 1. Defendant has not provided the Court with a copy of Policy 5.18, but the policy can readily be determined from sources whose accuracy cannot reasonably be questioned and therefore is subject to judicial notice. Fed. R. Ev. 201(b)(2). The policy, which has been in effect since January of 2000, provides that "[n]o adverse personnel action may be taken against an employee in retaliation or reprisal for the disclosure of information to a public body concerning an alleged violation of law, gross waste of moneys or public funds, or abuse of authority." Northern Arizona University Personnel Policy Manual, § 5.18 (5th ed., Jan. 2000), at http://hr.nau.edu/m/images/stories/docs/policy_manual.pdf.

- 4 -

Because Defendant had a protective policy in place at the time of Plaintiff's termination, as required by § 38-533, Defendant is exempt from § 38-532, the section on which Plaintiff now bases his whistle blower claim. *See Arizona State Bd. of Regents on Behalf of Arizona State University v. Arizona State Personnel Bd.*, 953 P.2d 904, 907-908 (Ariz. App. 1996), *vacated on other grounds*, 985 P.2d 1032 (Ariz. 1999).

### 2. Plaintiff Did Not Complain to a Public Body.

Even if Defendant were not exempt from § 38-532, the statute would provide no relief in this case. The statute applies only to the "disclosure of information of a matter of public concern . . . *to a public body*[.]" A.R.S. § 38-532(A) (emphasis added). The phrase "public body" is defined in the statute to include only a limited class of persons and entities:

> the attorney general, the legislature, the governor, a federal, state or local law enforcement agency, the county attorney, the governing board of a community college district or school district, the board of supervisors of a county or an agency director.

A.R.S. § 38-531(4).

Assuming Plaintiff's May 6, 2005 email to Ms. Russell could be construed as addressing matters of "public concern" – an issue the Court need not decide – the email was not sent to a "public body" as defined in the statute. It was sent to Defendant's internal human resources department. The email therefore did not constitute a protected communication under § 38-532.

Plaintiff argues that the email was sent to a "public body" because NAU's internal investigator, Ms. Harris, concluded that it was sent to a "public body" within the meaning of Policy 5.18. *See* Dkt. #29, Ex. J. But the definition of "public body" in NAU's policy is broader than the statute, applying to "a university president, provost, vice president or vice provost." Policy 5.18, ¶ B. The terms of NAU's policy do not control enactments of the Arizona legislature. The fact that NAU has chosen to provide broader protection in its policies than the Arizona legislature has provided in § 38-532 does not alter the statutory scheme or afford Plaintiff a broadened statutory cause of action. The Court will apply the

statute as written.[1]

### 3. Summary.

Plaintiff's claim under § 38-532 fails for three reasons: (1) the claim is not asserted in Plaintiff's complaint; (2) NAU is exempt from the statute; and (3) Plaintiff's May 6, 2005 email was not submitted to a "public body" as defined by § 38-531(4) and therefore was not a protected communication under the statute. *See Pitroff v. Yavapai County Bd. of Sup'rs.*, 2007 WL 2237680, at *5 (D. Ariz. 2007) (stating that a public employee filing suit under A.R.S. § 38-532 must comply with the public statement requirements of the statute).

### C. Title VII and A.R.S. § 41-1463, *et seq.*[2]

Plaintiff's response to Defendant's motion devotes almost no attention to Plaintiff's Title VII claim. Even the two paragraphs addressing the claim are cast in terms of supporting Plaintiff's whistle blowing claim. Dkt. #28 at 12-13. Perhaps Plaintiff neglects the gender discrimination claim because it clearly lacks merit.

Plaintiff, a male, was terminated by a male and replaced by a male. Plaintiff has produced no evidence that his termination was related to his gender. Although his problems arose with a female supervisor, she was not the person who terminated him and Plaintiff cites no evidence to suggest that her actions were based on his gender. Nor did Plaintiff's May 6, 2005 email suggest that his issues with Ms. Stefanko were gender-related.

Title VII makes "disparate treatment" based on sex a violation of federal law.

---

[1] With respect to educational institutions, the statute defines "public body" to include "the governing board of a community college district or school district." A.R.S. § 38-531(4). The Arizona Supreme Court has interpreted the Arizona Constitution as "identifying the 'regents of the university' as a governing board[.]" *Kromko v. Arizona Bd. of Regents*, 165 P.3d 168, 169 (Ariz. 2007) (quoting ARIZ. CONST. art. XI, § 5). Thus, even if the Court were to search the statutory definition for a relevant educational "public body," Plaintiff cannot prevail. Plaintiff did not send his email to the board of regents.

[2] The Court's analysis of Plaintiff's cause of action under A.R.S. § 41-1463, *et seq.*, will proceed under Title VII principles, as the ACRA "is modeled after and generally identical to [Title VII.]" *Higdon v. Evergreen Intern. Airlines, Inc.*, 673 P.2d 907, 910 n.3 (Ariz. 1983) (en banc); *see also Strong v. Progressive Roofing Services*, 2007 WL 2410354, at *9 (D. Ariz. 2007) ("The ACRA provides essentially the same relief as Title VII").

1 *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061-62 (9th Cir. 2002). To show
2 disparate treatment, Plaintiff must first establish a prima facie case of gender discrimination.
3 *Id.* at 1062 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).
4 Assuming, but not deciding, that Plaintiff has established a prima facie case, "the burden of
5 production – but not persuasion – then shifts to the employer to articulate some legitimate,
6 nondiscriminatory reason for the challenged action." *Id.* (citing *McDonnell Douglas*, 411
7 U.S. at 802).

8 Defendant alleges that Plaintiff was terminated for poor performance on the upgrade
9 project and detrimental comments regarding the project. Dkt. #20 at 6-7. An employee's
10 unsatisfactory job performance "constitute[s] a legitimate, nondiscriminatory reason for
11 [termination]." *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir.
12 2002).

13 As a result, the burden shifts back to Plaintiff under the third stage of the *McDonnell*
14 *Douglas* framework to "rebut the [employer's] showing." *Godwin v. Hunt Wesson, Inc.*, 150
15 F.3d 1217, 1220 (9th Cir. 1998). Plaintiff may offer "circumstantial evidence that tends to
16 show that the employer's proffered motives were not the actual motives because they are
17 inconsistent or otherwise not believable." *Id.* at 1222. Such indirect evidence of pretext,
18 however, "must be both 'specific' and 'substantial' in order to create a triable issue with
19 respect to whether the employer intended to discriminate on the basis of sex." *Id.* (citations
20 omitted). For several reasons, Plaintiff has not met this burden.

21 First, Plaintiff appears to contend that NAU terminated him for failing to report the
22 progress of the upgrade project on a daily basis, even though Ms. Stefanko, a female, was not
23 terminated for the same conduct. *See* Dkt. #28 at 12. In addition to the fact that Plaintiff's
24 failure to report was only one of several problems that led to his termination, Ms. Stefanko
25 did not engage in the same conduct. Defendant has presented evidence that Ms. Stefanko
26 was assigned to use a different mechanism – a spreadsheet – to track the progress of the
27 software transition. Dkt. #19, ¶27; *see id.* at Ex. 6, ¶11. Plaintiff does not dispute this
28 evidence. *See* Dkt. #29, ¶27. Plaintiff's comparison thus is insufficient to create a triable

1 question on whether he was treated differently on the basis of gender.

2 Second, Plaintiff asserts that he was not "disciplined in the same manner" as two
3 females "who both misbehaved in a manner on the job that was more serious than me[.]"
4 Dkt. #29, Ex. B, ¶16. Plaintiff states that one of the females was permitted to resign instead
5 of being terminated and that both females were generally treated with greater professional
6 courtesy. But Plaintiff provides no details concerning these two female employees or the
7 nature of their "more serious conduct," nor any evidence suggesting that differences in
8 treatment were based on gender as opposed to other factors.

9 Third, Plaintiff alleges that of the six team lead positions available in the
10 administrative computing section following his termination, only one was occupied by a
11 male. Dkt. #28 at 13. Plaintiff appears to argue that the ratio of male team leads to female
12 team leads is evidence of gender discrimination. But Plaintiff has provided no legal authority
13 for the proposition that an employer violates Title VII because it does not, at a given
14 moment, employ equal or proportional numbers of men and women in a particular section
15 of its organization. *See International Brotherhood of Teamsters v. United States*, 431 U.S.
16 324, 340 n.20 (1977) ("Title VII imposes no requirement that a work force mirror the general
17 population."). The ratio in question would be of greater probative value if there were greater
18 numbers of team leaders in the section, s*ee id.* ("Considerations such as small sample size
19 may, of course, detract from the value of such [statistical] evidence"), or if the presence of
20 males and females was compared to a relevant labor pool, *see Hazelwood Sch. Dist. v. United*
21 *States*, 433 U.S. 299, 308 (1977) (observing that, for specialized fields, "a proper
22 comparison" is between the composition of the employer's staff and the "composition of the
23 qualified . . . population in the relevant labor market."). Plaintiff has provided the Court with
24 no meaningful benchmark to evaluate the alleged gender imbalance in the six-person
25 leadership of the administrative computing section. And to the extent the Court is interested
26 in assessing a snapshot of the team leads in that section, the record shows that Defendant
27 hired a male to replace Plaintiff. Dkt. #27, ¶60.

28 In summary, Plaintiff has not provided specific and substantial evidence that NAU's

- 8 -

1  proffered reason for terminating him is unworthy of credence. Nor has he provided evidence
2  from which a reasonable trier of fact could find that he was treated differently because of his
3  gender. The Court will grant Defendant's motion for summary judgment on this claim.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Dkt. #20) is **granted**.
2. The clerk shall **terminate** this action.

DATED this 10th day of October, 2007.

David G. Campbell
United States District Judge